UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STT ACQUISITION, INC.,

     Plaintiff,

v.                              Case No. 8:23-cv-2126-KKM-AAS

GREAT LAKES INSURANCE SE,

     Defendant.

_____

<u>ORDER</u>

     STT Acquisition, Inc., sued its insurer, Great Lakes Insurance SE, for breach of contract, claiming that Great Lakes underpaid benefits owed under the insurance policy. Compl. (Doc. 1-1). Great Lakes filed a counterclaim seeking to void the policy for fraud, alleging that STT submitted a fraudulent estimate. Am. Ans. (Doc. 23).

     Great Lakes moves for summary judgment against STT, arguing that STT's estimate of damages does not comply with the policy's valuation requirements, and therefore STT cannot prove the damages element of its breach of contract claim. Mot. Summ. J. (Doc. 60) (GL MSJ). STT opposes. Resp. to GL MSJ (Doc. 65). STT moves for summary judgment on Great Lakes's counterclaim, Am. Mot.

Summ. J. (Doc. 63) (STT MSJ), and Great Lakes opposes, Resp. to STT MSJ (Doc. 67). For the reasons below, I deny STT's motion and grant Great Lakes's motion.

## I.    BACKGROUND

Great Lakes insured STT under a commercial lines policy effective December 2019 through December 2020. Joint Statement of Undisputed Facts (Doc. 59) (JSUF) ¶¶ 1-3; Policy (Doc. 59-1) at 7. The policy covered STT's property, a three-story commercial building, up to $2,000,000. JSUF ¶¶ 4-5. STT reported that, on January 5, 2020, the building had been damaged by a fire that had started in a nearby building. *Id.* ¶ 6; Not. of Intent to Initiate Litigation (Doc. 59-1) at 226. After Great Lakes had the property inspected by a third-party claim administrator, Great Lakes paid STT an advance payment of $250,000 in early February, per the policy. *Id.* ¶¶ 7-10.

In late February, Great Lakes's engineers prepared an estimate to repair the damage in the amount of $761,257.76. *Id.* ¶¶ 11-12. A few months later, STT provided Great Lakes with an estimate from Total Restoration Services (TRS), which STT had contracted with, in the amount of $1,026,557.21. *Id.* ¶ 13. In July, STT provided a new, higher estimate from TRS in the amount of $1,099,949.21. *Id.* ¶ 14. Based on this estimate, Great Lakes's third-party administrator issued a

supplemental building coverage payment. *Id.* ¶ 15. In October, TRS provided Great Lakes with a third revised estimate of $1,785,885.91. *Id.* ¶ 16.

After more inspections by Great Lakes's third-party administrator, Great Lakes issued a supplemental payment of $135,326.15 to STT. *Id.* ¶ 17. On December 27, 2022, STT filed a Notice of Intent to Initiate Litigation, which included a new estimate from TRS for $1,947,086.31. *Id.* ¶ 18. STT filed the action in state court and Great Lakes removed it to federal court. Not. of Removal (Doc. 1). Great Lakes filed an amended answer and counterclaim in January 2024. *See* Am. Ans.

During litigation, STT disclosed a new estimate by Structural Engineering and Inspections, Inc. (SEI) dated June 10, 2024, for $2,100,683.11. JSUF ¶ 20; SEI Estimate (Doc. 59-2). In its Rule 26 disclosures, STT confirmed its breach of contract action is based on the SEI estimate. *Id.* ¶ 21.

## II.    LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Reese v. Hebert*, 527 F.3d 1253, 1268-71 (11th Cir. 2008).

## III.   ANALYSIS

### A. Great Lakes's Motion for Summary Judgment

Great Lakes argues that it is entitled to summary judgment on STT's breach of contract claim because the insurance policy does not contemplate the form of

damages presented by STT and therefore STT cannot prove the damages element of its breach of contract claim. *See* GL MSJ at 8-17. I agree.

To prevail on a breach of contract claim in Florida, a plaintiff must prove "(1) the existence of a contract[;] (2) a breach of the contract[;] and [(3)] damages that resulted from the breach." *DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n, Inc.*, 219 So. 3d 107, 109 (Fla. 3d DCA 2017). Except when there is a "genuine inconsistency, uncertainty, or ambiguity," insurance contracts should be interpreted according to the plain language of the policy. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). "In construing an insurance policy, the court should read the policy as a whole, giving every provision its full meaning and operative effect." *Roberts v. Fla. Laws. Mut. Ins. Co.*, 839 So. 2d 843, 845 (Fla. 4th DCA 2003).

There is no dispute that the SEI estimate is based on the replacement cost value (RCV) of repairing the damaged building.[1] JSUF ¶ 24. When the estimator

---

[1] "Replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property." *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (quoting *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 983 (Fla. 3d DCA 1994) (per curiam)).

was asked whether the SEI estimate was replacement cost value, actual cash value, or neither, he answered: "I would consider it to be a[] [replacement cost value] estimate." Anderson Dep. (Doc. 65-5) at 51-52. At the top of the column for each category in the SEI estimate is "RCV." [2] *See generally* SEI Estimate. The summary page at the end of the SEI estimate also states "Replacement Cost Value." *Id.* at 57.

The insurance policy is a standard commercial building policy. *See generally* Policy. It contains certain mandatory provisions but also allows for the insured to select optional coverages "if shown as applicable in the Declarations." *Id.* at 37. The policy lists replacement cost coverage as an option under optional coverages. *Id.* at 38.

STT did not select replacement cost coverage in its policy. On the declarations page, the policy states that replacement cost coverage "[a]pplies only if 'X' is shown below." *Id.* at 23. Here, there is no X marked for replacement cost building coverage, meaning that replacement cost coverage was not selected by STT. *Id.* Alternatively, even if replacement cost was selected, the policy provides that "[it] will not pay on a

---

[2] The estimate also has a column that has "ACV" (actual cash value) at the top. *See generally* SEI Estimate. But the estimator testified that that column is "really a moot column in this estimate" because the estimate did not take off any amount for depreciation. Anderson Dep. at 53.

replacement cost basis" "[u]ntil the lost or damaged property is actually repaired or replaced" and "the repair or replacement is made as soon as reasonably possible after the loss or damage." *Id.* at 38. And STT nowhere in the record contends that it did in fact "actually repair[] or replace[]" the damaged property. *Id.* Therefore, the policy does not provide coverage for replacement cost value in this instance. *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) ("[C]ourts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed.").

STT responds that there are remaining questions of fact as to whether the policy endorsement that governs valuation contemplates replacement cost value. Resp. to GL MSJ at 5-6. But there is no dispute that STT elected the "Functional Valuation" endorsement, which replaces the default valuation section of the policy. Policy at 9, 23, 85. The "Functional Valuation" endorsement explains what Great Lakes will pay depending on certain preconditions, such as whether the loss was total or partial. *Id.* at 85. STT contends that the SEI estimate complies with provisions in the endorsement or ones that are otherwise ambiguous—for example, one specifying that Great Lakes will pay for the cost of a "functionally equivalent" building to the one that was damaged, and another that Great Lakes will pay for the amount it

would cost to repair or replace the damaged building on the same site. Resp. to GL MSJ at 5-6.

But these provisions do not contemplate STT's replacement cost value estimate. The provision requiring a "functionally equivalent" building requires that the building be "less costly." Policy at 85. And the other provision specifies that the cost to repair be done with "less costly material, if available, in the architectural style that existed before the loss or damage occurred." *Id.* Both provisions specify that the building and materials must be "less costly," but the SEI estimate was prepared to repair the building, with no indication it attempted to do so in a "less costly" manner than the original building. *See* Anderson Dep. at 83, 95 (explaining that the estimate was the cost to repair the building). And the second provision requires that the cost to repair or replace the damaged building on the same site subtract for the cost of "physical deterioration and deprecation," Policy at 85, which the SEI estimate did not do, Anderson Dep. at 52 ("We did not apply [] depreciation."); *see also id.* at 30 (admitting that the SEI estimate did not take into account any provisions in the policy). On this point, STT argues that Great Lakes "waived" any requirement for physical deterioration and depreciation, citing testimony from a Great Lakes representative. Resp. to GL MSJ at 7. STT provides no analysis or case law for this

8

argument. *See id.* But to the extent it is an attempt to extend coverage through waiver, that argument is foreclosed by Florida caselaw. *Doe ex rel. Doe v. Allstate Ins. Co.*, 653 So. 2d 371, 372 (Fla. 1995) (per curiam) ("[T]he insurer's *coverage* or restrictions on the *coverage* cannot be extended by the doctrine of waiver and estoppel." (quoting *Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co.*, 268 So. 2d 560, 563 (Fla. 4th DCA 1972), *opinion adopted*, 276 So. 2d 37 (Fla. 1973))).

Because STT's evidence for damages to prove its breach of contract claim is not contemplated by the insurance policy, the SEI estimate is inadmissible. *Universal Prop. & Cas. Ins. Co. v. Qureshi*, 396 So. 3d 564, 566 (Fla. 4th DCA 2024) (concluding that evidence of replacement cost value damages was inadmissible because the plaintiff was not entitled to such damages under the policy), *reh'g denied* (Nov. 4, 2024); *Citizens Prop. Ins. Corp. v. Salazar*, 388 So. 3d 115, 118 (Fla. 3d DCA 2023) (explaining that the plaintiff's estimate of damages was based on replacement cost value instead of actual cash value as required under insurance policy and it would lead the jury to engage in "improper guessing and speculation"), *reh'g denied* (Jan. 9, 2024).[3] Therefore, STT "fail[s] to make a sufficient showing on an

---

[3] Great Lakes makes other arguments in its motion for summary judgment for why the estimate is improper, but I do not address them because the estimate's valuation method is not contemplated by the parties' policy.

9

essential element of [its] case with respect to which [it] has the burden of proof," and Great Lakes is entitled to summary judgment. *Celotex*, 477 U.S. at 323; *see CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 192-93 (11th Cir. 2021) (per curiam) (affirming grant of summary judgment in favor of insurance company because the plaintiff sought coverage they were not entitled to under the policy). Alternatively, even if the SEI estimate were admissible, that kind of estimate is not evidence of any damages to which STT is entitled under the policy. As a result, STT cannot recover for damages not contemplated by the parties' policy.

## B. STT's Motion for Summary Judgment

STT moves for summary judgment on Great Lakes's counterclaim. *See* STT MSJ. Great Lakes's counterclaim seeks to void the policy on the basis that the estimate prepared by TRS in October was fraudulent. *See* Am. Ans. The policy's "concealment, misrepresentation or fraud" provision requires voiding the policy "in any case of fraud by [the insured]" or if the insured "intentionally conceal[s] or misrepresent[s] a material fact concerning" coverage. Policy at 49.

"[A] policy provision that voids coverage for fraud or concealment relating to the insurance is fully enforceable in Florida." *Anchor Prop. & Cas. Ins. Co. v. Trif*, 322 So. 3d 663, 671 (Fla. 4th DCA 2021). To void a policy under such a provision,

the insureds must have made a material misrepresentation or concealed material facts. *Svetlanovich v. State Farm Fla. Ins. Co.*, 291 So. 3d 1261, 1265 (Fla. 2d DCA 2020). Materiality means it is "reasonably relevant to the insurance company's investigation of a claim." *Trif*, 322 So. 3d at 672 (quoting *Dadurian v. Underwriters At Lloyd's, London*, 787 F.2d 756, 760 (1st Cir. 1986)).

Overvaluation is not enough, on its own, to void a policy under Florida law. *Trif*, 322 So. 3d at 673 (collecting cases). "[I]n the post-loss context, the term 'false statement' in the 'Concealment or Fraud' exclusion should be interpreted as including an element of intent." *Id.* at 675. The evidence must show that the insureds "acted with fraudulent intent in submitting" an estimate. *Id.* at 676.

Based on the record, whether STT engaged in fraud when preparing the October estimate is a question of fact for the jury. After Great Lakes received the increased October estimate, it contacted vendors on the revised estimate who confirmed that they could have completed the work for the original price, and some reported that they were never contacted about providing a new estimate. Tomuta Decl. (Doc. 67-1) ¶ 22. And the October estimate made several changes including increasing drywall thickness, adding insulation, and "high and unnecessary" charges for metal studding. *Id.* ¶ 23. This is a quintessential jury question—the jury must

11

decide "whether an insured has made a material misrepresentation." *Lopes v. Allstate Indem. Co.*, 873 So. 2d 344, 347 (Fla. 3d DCA 2004).

STT makes three arguments in response. First, STT argues the policy only voids for fraud if it is committed by an insured, not a third party like an estimator. STT MSJ at 4-5. It cites to a provision in the policy specifying that "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance." Policy at 49. But STT does not cite a single authority for the proposition that it cannot be held liable for fraud committed on behalf of tits representatives. *Cf. Graves v. Great Lakes Ins. SE*, No. 2:23-CV-373-SPC-KCD, 2024 WL 2055153, at *1 (M.D. Fla. May 8, 2024) (disagreeing with insured that it cannot be held liable for alleged fraud because it was their representative that prepared the fraudulent material and not the insured); *Mezadieu v. SafePoint Ins. Co.*, 315 So. 3d 26, 29 (Fla. 4th DCA 2021) ("Simply put, an insured cannot blindly rely on and adopt an estimate prepared by his or her loss consultant without consequence."). Indeed, Great Lakes cites evidence suggesting that the estimator, TRS, was not acting beyond the control of STT. *See* Resp. to STT MSJ at 12-13; Samuels Dep. (Doc. 63-2) at 20 (admitting that the TRS representative Jim Bova did not have "carte blanche" authority to do "whatever he wanted"); *see* Work

12

Authorization (Doc. 67-7). Whether TRS operated "beyond [STT's] direction or control" is a jury question. Policy at 49.

Second, STT argues that, because the claim is premised on fraud perpetrated by its representative and not STT, Great Lakes cannot show that STT had the requisite intent to commit fraud. STT MSJ at 14-15. But STT does not identify a case holding that intent cannot be imputed to the insured. To be sure, evidence of intent is almost always established by circumstantial evidence and remains a jury determination. *See Cohen v. Kravit Est. Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. 4th DCA 2003) (explaining "summary judgment is rarely proper" in cases that turn on "circumstantial evidence of intent and knowledge"); *see also Bacon & Bacon Mfg. Co. v. Bonsey Partners*, 62 So. 3d 1285, 1287-88 (Fla. 2d DCA 2011). Even if STT's proposition were true, a jury could rely on the record to find intent here. In response to Great Lakes's concerns that TRS submitted a fraudulent estimate, Jacob Samuels, STT's corporate representative, testified that he "wanted to get [his] own contractors to do bids," but never did. Samuels Dep. at 61-63. STT ultimately retained a public adjuster to prepare a new bid, but it was never provided to Great Lakes. Tomuta Decl. ¶¶ 27-28. This fact shows a genuine dispute of material fact as to STT's intent.

Last, STT argues that somehow Great Lakes cannot claim fraud because there was a dispute about the amount before the lawsuit. STT MSJ at 21. STT states, without any caselaw or even explanation, "that there was a dispute as to the amount owed by the insurer before the insured filed suit and therefore summary judgment" should be granted in STT's favor. *Id.* To the extent that the purpose of STT's argument is that the alleged fraud could not have induced reliance on Great Lakes's part, that arguments fails—an insurance company is not required to show inducement to establish fraud. *Lopes*, 873 So. 2d at 347 ("[T]here is no requirement that an insurer show prejudicial reliance in order to enforce the contract provision."); *Mich. Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 923 (11th Cir. 1998) (applying Florida law) (explaining that an insurer is not required to "demonstrate that it relied on the insured's misrepresentations when asserting a policy defense based on fraud").

## IV.   CONCLUSION

Accordingly, the following is **ORDERED**:

1.  Great Lakes Insurance SE's Motion for Summary Judgment (Doc. 60) is

    **GRANTED**.

14

2. STT Acquisition, Inc.'s Amended Motion for Summary Judgment (Doc. 63) is **DENIED.**

3. Because the Joint Statement of Undisputed Facts (Doc. 59) sufficiently clarified the factual background, STT Acquisition, Inc.'s Motion to Strike (Doc. 61) is **DENIED**.

4. STT Acquisition, Inc.'s Amended Motion in Limine (Doc. 64) to exclude evidence or argument showing that STT committed fraud is **DENIED** in the light of there being jury questions regarding Great Lakes's counterclaim.

**ORDERED** in Tampa, Florida, on August 4, 2025.

Kathryn Kimball Mizelle
United States District Judge